# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEONARD SOKOLOW, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LJM FUNDS MANAGEMENT, LTD., ) <br> ) <br> Defendants. ) | Case No. 18-cv-01039 <br> Judge Robert M. Dow, Jr. |
| STANLEY BENNET, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LJM FUNDS MANAGEMENT, LTD., ) <br> ) <br> Defendants. ) | Case No. 18-cv-01312 <br> Judge Robert M. Dow, Jr. |
| JAMES NOSEWICZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LJM FUNDS MANAGEMENT, LTD., ) <br> ) <br> Defendants. ) | Case No. 18-cv-01589 <br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

This is a securities class action against LJM Funds Management, Ltd.; Two Roads Shared Trust; Northern Lights Distributors, LLC; Andrew Rogers; Mark Gertsen; Mark Garbin; Neil Kaufman; Anita Krug; James Colantino; Anish Parvataneni; and Anthony Caine. Seven movants requested that the Court consolidate the above-captioned cases and sought appointment as lead plaintiff in this matter: (1) Paragon National, LP [47], (2) Lynda Godkin [52], (3) High Country

1

Capital Management [57], (4) Tradition Capital Management LLC, and SRS Capital Advisors, Inc. (together, the "Investment Advisor Group") [61], (5) Donn Glander, Charles Irvine, Gustav Swanson and Pell Limited Liability Company (together, the "Glander Group") [67], (6) Justin and Jenny Kaufman, Joseph N. Wilson and Dr. Larry and Marilyn Cohen (collectively, the "Kaufman Group") [71], (7) MWH Investments, LLC, Personal CFO Solutions, LLC, John W. Kapouch, and James Frugé (collectively, the "MWH Group") [75]. Subsequently, the Investment Advisor Group and the Kaufman Group (together, the "Combined Group") asked that they be appointed lead plaintiff together. [97.] All other movants except the MWH Group and Lynda Godkin either support or do not oppose appointing the Combined Group as lead plaintiff in this action.

To the extent that the motions [47; 52; 57; 61; 67; 71; 75] request consolidation of the above-captioned cases, they [47; 52; 57; 61; 67; 71; 75] are denied as moot because the Court already has consolidated the above-captioned cases. [See 78.] For the reasons set forth below, the Court grants in part the motions of the Investment Advisor Group [61] and the Kaufman Group [71] and approves the selection of Robbins Geller Rudman & Dowd and Labaton Sucharow LLP as co-lead counsel. The Court denies the remaining motions [47; 52; 57; 67; 75] in full. The case is set for further status on July 17, 2018 at 10:15 a.m.

**I.  Background**

The above-captioned actions arise from alleged violations of the Securities Act of 1933 (the "Securities Act") by LJM Funds Management, Ltd. ("LJM"), Two Roads Shared Trust, Northern Lights Distributors, LLC, and several individual defendants (collectively, the "Defendants"). LJM Preservation & Growth Fund (the "Fund") is a mutual fund traded under the symbol ("LJMIX"). Plaintiffs allege that Defendants caused the Fund's publically traded

share price to be artificially inflated by making false and/or misleading statements related to the Fund and/or failing to disclose that (i) the Fund was not focused on capital preservation, (ii) did not take appropriate steps to preserve capital in down markets, and (iii) left investors exposed to an unacceptably high risk of catastrophic losses. Plaintiffs further allege that when the fraud was revealed to the investing public, the market value of the Fund's shares declined precipitously, damaging class members. Seven movants originally sought to be appointed lead plaintiff. Only the Combined Group, the MWH Group, and Lynda Godkin continue to seek appointment as lead plaintiff. Currently pending before the court are the motions for appointment as lead plaintiff filed by the remaining three movants.

## II. Legal Standard

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides guidelines for the appointment of a lead plaintiff in a securities class action case. The PSLRA requires that the Court "appoint as a lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members[.]" 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" who "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. 78u–4(a)(3)(B)(iii)(I)(aa); (bb); and (cc). This presumption may be rebutted, however, if a member of the purported class establishes that the "presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The PSRLA further provides that

the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(b)(v).

## III. Analysis

### A. Timing of Motions

By statute, any motions for lead plaintiff of a class action brought under the PSLRA must be made within 60 days of the Early Notice. See 15 U.S.C. §77z-1(a)(3)(A)(i)(II). The Investment Advisor Group and the Kaufman Group modified their initial proposals and submitted a joint response brief asking that they be appointed lead plaintiff together, with their respective attorneys serving as co-lead counsel. [See 97.] Although the Combined Group filed its joint amended proposal after the 60-day deadline in the PSLRA, courts have permitted amended motions by groups that were combined after the 60-day deadline as long as each member of the amended group previously filed a timely motion for appointment as lead plaintiff. See *City of Sterling Heights Gen. Employees' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *3 (N.D. Ill. Apr. 18, 2012) (citing *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *10 (S.D.N.Y. March 19, 2012)). Because the Investment Advisor Group and the Kaufman Group each filed timely motions, the Court concludes that the amended proposal also is timely. Thus, all of the remaining movants have satisfied 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa).

### B. Financial Interest

The PSLRA presumes that the most adequate plaintiff is the plaintiff who—in addition to satisfying other requirements—has the largest financial interest in the relief sought by the class. "The largest financial interest provision seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate

plaintiff.' The PSLRA, however, does not specify how courts should measure the largest financial interest in the relief sought by the class." *Hospira, Inc.*, 2012 WL 1339678, at *3 (internal citations and quotations omitted).

Most courts consider: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." *Hospira, Inc.*, 2012 WL 1339678, at *4 (citing *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); see also *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) ("[W]e agree with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." (citations omitted)). While courts differ on the precise weight to apply to each factor, most courts agree that fourth factor—the approximate losses suffered—is the most salient factor in assessing the lead plaintiff. See *In re CMED Sec. Litig.*, 2012 WL 1118302, at *3 (S.D.N.Y. April 2, 2012) ("In giving weight to the four factors, courts in this District, as others, place the most emphasis on the last of the four factors: the approximate losses suffered by the movant above any weight accorded to net shares purchased and net expenditures." (citations and quotations omitted)); *In re Diamond Foods, Inc. Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. Mar. 20, 2012) (concluding that the "fourth factor, 'approximate loss,' is generally considered the most important factor"); *Canson v. WebMD Health Corp.*, 2011 WL 5331712, at *2 (S.D.N.Y.

5

Nov. 7, 2011) (concluding that "[t]he fourth factor, loss suffered, weighs most heavily in the court's analysis" (citation omitted)).

The movants still being considered for appointment as lead plaintiff claim the following losses:

| Movant | Claimed Financial Interest[1] |
|---|---|
| Combined Group | $8,623,635 |
| MWH Group | $8,270,160 |
| Lynda Godkin | $188,000 |

Although the Combined Group claims the largest sum of financial losses, the other movants argue that the Court should not allow all of the members of the Combined Group to aggregate their losses to establish the largest financial interest in the relief sought by the class.

The Seventh Circuit has not yet addressed whether and to what extent the claims of class members can be aggregated for the purposes of determining which movant has the largest financial interest in the relief sought by the class. Although some courts have held that a group of investors must have a preexisting relationship to serve together as lead plaintiffs, see, *e.g., Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845 (S.D. Ind. 1999), "the 'trend' has been to allow small groups of investors to act as lead plaintiff even if they do not have pre-existing relationships." See *Bang v. Acura Pharm., Inc.*, 2011 WL 91099, at *2 (N.D. Ill. Jan. 11, 2011) (citing *Sabbagh v. Cell Therapeutics, Inc.*, 2010 WL 3064427 at *4-5 (W.D. Wash. Aug. 2,

---

[1] The parties in this case have quantified their respective financial interests in terms of their approximate losses suffered. Although the MWH Group also quantified its losses in terms of the other factors sometimes considered by courts, the MWH Group recognizes that "most courts simply determine which potential lead plaintiff has suffered the greatest total losses" to measure each movant's respective financial interest. [105, at 8 (citing Takara Tr. v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005); *Hospira*, 2012 WL1339678, at *4).] Absent reason for focusing on the other factors considered by courts, the Court uses the approximate losses claimed by each of the remaining movants as the measure of each movant's respective financial interest.

2010)). Furthermore, as the Supreme Court recently recognized, 80 percent "of securities class actions in post-PSLRA data sample had two or more co-lead counsel firms[.]" *China Agritech, Inc. v. Resh*, 2018 WL 2767565, at *7 n.3 (U.S. June 11, 2018) (citing Choi & Thompson, Securities Litigation and Its Lawyers: Changes During the First Decade After the PSLRA, 106 Colum. L. Rev. 1489, 1507, 1521, 1530 (2006)).

This trend is consistent with the Third Circuit's decision *In re Cendant Corporation Litigation*, which held that small groups of investors can aggregate their losses in computing the total loss amount and act as lead plaintiff even if they did not have any pre-existing relationship. 264 F.3d 201, 266-67 (3rd Cir. 2001). In reaching this conclusion, the Third Circuit reasoned that the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner[.]" See *id*. at 266.

Still, "to enjoy the rebuttable presumption that the [PSLRA] statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers." *In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at * 2 (S.D.N.Y. Dec. 6, 2007). In addition, "[a]t some point, a group may become too large for its members to operate effectively as a unit." *Aguilar v. Vitamin Shoppe, Inc.*, 2018 WL 1960444, at *11 (D.N.J. Apr. 25, 2018) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001)). "Such unwieldiness would vitiate the PSLRA's purpose of having active and engaged plaintiffs supervise the conduct of the litigation * * * [T]he larger [the size of a proposed lead plaintiff group], the greater the dilution of control that [the members of that group] can maintain over the conduct of the putative class action." *Id*. (internal citations and quotations omitted); see also *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 815-16 (N.D. Ohio 1999) ("The greater the number of persons comprising the group, the more difficult it is for those persons to

7

communicate with each other, and to speak with a single, coherent voice when making decisions about the conduct of the litigation, or, more precisely, the conduct of the attorney or attorneys in prosecuting the litigation.").

Courts should consider the extent of the prior relationships between the parties as part of its analysis of whether the movant will adequately represent the interests of the class, but the parties' prior relationships alone should not be dispositive. *In re Cendant Corp. Litig.*, 264 F.3d at 266-67. Courts also should consider other factors, such as the efforts of lawyers in creating a movant group to determine whether the resulting group could "be counted on to monitor counsel in a sufficient manner[,]" *id*. at 267 (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307-08 (S.D.N.Y. 2001)), and the size of the movant group to determine whether that group can fairly and adequately represent the class. *Id*. at 267; see also *Sabbagh*, 2010 WL 3064427 at *5 (recognizing a group of investors should be "small and cohesive enough such that it can adequately control and oversee litigation") (citing *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008)).

"[C]ourts should generally presume that groups with more than five members are too large to work effectively." See *Cendant*, 264 F.3d at 267. However, there is no "hard-and-fast-rule" regarding the maximum number of parties that can serve as lead plaintiffs in a securities class action. *Id*. Whether a group can serve as lead plaintiff together should be determined on a case-by-case basis. *Id*. Groups including more than five members have been appointed lead plaintiff when the specific facts of the case indicated that the group could act collectively and separately from their lawyers. See, *e.g., Barnet v. Elan Corp.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (group of six "not too unwieldy a number to effectively manage the litigation"); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (group of seven "does not present a group so

8

cumbersome as to deliver the control of the litigation into the hands of the lawyers"); *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 352-53 (S.D. Cal. 1998) (approving six-member lead plaintiff group).

Based on all of the available information, the Court concludes that the Combined Group can adequately represent the interests of the class in this case. Although the Combined Group has more than five members, each member of the combined group has a significant financial interest in the relief sought by the class. In fact, out of the remaining movants, the Combined Group includes both the individual investor and the institutional investor claiming the greatest losses. Traditional Capital Management LLC (one of the investment advisors in the Combined Group) claims $5,925,856.45 in losses [63-2, at 28], which is significantly more than the claimed losses of the each investment advisor in the MWH Group. [94-1, at 44.] Mr. Wilson (one of the individual investors in the Combined Group) claims over $1.1 million in losses [103, at 6], which is more than the $908,059.23 claimed by the James Frugé (the individual investor in the MWH Group) [94-1, at 44] and the $188,000 in losses claimed by Ms. Godkin. Given the significant losses claimed by each member of the Combined Group, each member of the group can be counted on to monitor counsel in a sufficient manner. Thus, appointment of the Combined Group as lead plaintiff in this matter is consistent with the primary purpose of the PSLRA, which is to curtail the influence of professional, figurehead plaintiffs by transferring "primary control of private securities litigation from lawyers to investors." S. REP. 104-98, 6, 1995 U.S.C.C.A.N. 679, 685.

Furthermore, the Combined Group is sufficiently small and cohesive to adequately control and oversee litigation. Although the Combined Group includes seven members, the individual investors in the Combined Group had pre-litigation relationships. Justin Kaufman is

married to Jenny Kaufman, and Dr. Larry Cohen and Marilyn Cohen are his in-laws. [97-1, at 4.] Furthermore, Mr. Kaufman avers that he has known Joseph Wilson for more than three years. *Id*. Although these individuals do not have any pre-litigation relationship with the two investment advisors in the Combined Group,[2] the joint declaration submitted by the Combined Group in support of their motion for appointment as lead plaintiff explains how and why the Kaufman Group and the Investment Advisor Group made the decision jointly to seek appointment as lead plaintiff in this matter. *Id*. at 5-7. Specifically, as part of an effort to resolve the competing motions for appointment as lead plaintiff, the Kaufman Group and the Investment Advisor Group concluded that it made sense to combine resources to ensure that the class achieves the best results. *Id*. at 6-7. This combination was supported by movants High Country Capital Management and Paragon National LP and was not opposed by movant Glander Group. [97, at 8 n.3.]

The combination of institutional and individual investors with a significant financial interest in this case serves to protect the interests of the class. To begin, the PSLRA was enacted "to increase the likelihood that institutional investors will serve as lead plaintiffs" because institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep. No. 104-369, at 34 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Thus, the PSLRA reflects a "presumption that institutional investors be appointed lead plaintiff." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). In this case, the only institutional investors

---

[2] The two investment advisors in the Investment Advisor Group also had a pre-litigation relationship and submitted an affidavit indicating that they independently decided to join together to file a motion for appointment as lead plaintiff. [63-3.]

10

seeking appointment as lead plaintiff are investment advisors. Ms. Godkin argues that the investment advisors may have conflicts of interest with others in the class. As discussed below, nothing before the Court at this time reveals the contours of any present conflict of interest. However, appointing a lead plaintiff group including both investment advisors and individual investors helps ensure that there is a check on the investment advisors while respecting the PSLRA's preference for institutional investors. Indeed, other courts have recognized that more diverse groups can better serve the interests of class members in securities class actions. See *Hospira*, 2012 WL 1339678, at \*8; see also *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956, at \*3 (D.N.J. Apr. 24, 2000) (appointing two competing movants as co-lead plaintiffs in view of the desirability of having both institutional investors and individual investors as lead plaintiffs "since each may bring a unique perspective to the litigation"); *In re Oxford Health Plans*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (appointing three competing movants as co-lead plaintiffs that "all suffered significant losses" on the grounds that such a structure "provides the proposed class with the substantial benefits of joint decision-making" and is otherwise consistent with the PSLRA).

The MWH Group asks that—in the event the Kaufman Group and the Investment Advisor Group are permitted to combine—the Court permit the MWH Group to file an amended lead plaintiff motion on behalf of itself and the Glander Group. [105, at 16.] However, there is no evidence that ***any*** of the eight members of that proposed group had any pre-litigation relationship with each other. Moreover, allowing unrelated movants to continuously amend their lead plaintiff motions for the apparent purpose of adding class members to obtain lead plaintiff status is both impractical and contrary to the purposes of the PSLRA.[3]

---

[3] MWH Group attempts to distinguish *Hospira* and other cases involving post-deadline combinations by arguing that the lead plaintiff appointed in those cases included the movant with the greatest financial losses, which indicated

11

Ms. Godkin also argues that the Combined Group's losses are overstated because its claimed losses include—according to Ms. Godkin—losses associated with claims that the investment advisors in the Combined Group lack standing to bring. Specifically, Ms. Godkin argues that the investment advisors lack standing to pursue claims on behalf of the investors they advised, citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, which held that an investment advisor must submit evidence that its clients transferred ownership of or title to their claims in order to have Article III standing. 549 F.3d 100, 109 (2d Cir. 2008).

However, the Court in *Huff* recognized that standing could be established by showing that the claims asserted were assigned to the investment advisor seeking to bring claims on behalf of its clients. 549 F.3d at 108 ("[A]n assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'"); see also *Lowry v. Baltimore & Ohio R. Co.*, 707 F.2d 721, 729 (3d Cir. 1983) ("[T]he availability of such Rule 10b-5 actions should be limited to those investors who themselves have been defrauded, or who are express assignees of defrauded parties."). Courts therefore have allowed investment advisors to serve as lead plaintiffs when their clients assigned legal title to the investment advisors *before* the investment advisors filed their motions for appointment as lead plaintiff. See, *e.g., City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014); *Markette v. XOMA Corp.*, 2016 WL 2902286, at *4 (N.D. Cal. May 13, 2016) ("As an initial matter, post-complaint assignments of litigation rights have been found valid in circumstances analogous to those here." (citing *Northstar Fin. Advisors, Inc. v. Schwab Investments*, 779 F.3d 1036, 1044, 1048 (9th Cir. 2015)); *cf. In re Bard Assocs., Inc.*, 2009 WL

---

that the combination was not solely for the purpose of obtaining lead plaintiff status. As discussed already, out of the remaining movants, the Combined Group has the individual investor and institutional investor claiming the most in losses. Furthermore, as discussed above, the Combined Group has explained how and why they now seek appointment as lead plaintiff together and how such a combination will better serve the interests of the class.

4350780, at *2 (10th Cir. Dec. 2, 2009) (indicating that assignments must be obtained prior to the 60-day deadline for filing lead plaintiff motions set forth in the PSLRA); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (holding investment advisor lacked standing to bring claims assigned after it was appointed lead plaintiff).[4]

In fact, Ms. Godkin appears to recognize that the investment advisors would have standing if their clients assigned their claims to the investment advisors, but argues that "it is virtually impossible to verify the validity of the hundreds of assignments" obtained by the investment advisors without more information identifying the beneficial owners of the accounts. [95, at 10 n.2.] As discussed below, the Court has no reason to question the validity of the assignments or the accuracy of the affidavits provided by the investment advisors in the Combined Group. Accordingly, the Court sees no reason to exclude losses associated with claims assigned to the investment advisors in the Combined Group from the Combined Group's claimed losses. The Combined Group therefore is the movant with the largest financial interest in the relief sought by the class and satisfies 15 U.S.C. § 78u–4(a)(3)(B)(iii)(bb).

### C. Rule 23 Requirements

The PSLRA further provides that the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §

---

[4] Ms. Godkin also argues that the investment advisors are improperly grouping hundreds of clients' claims. [104, at 9-11.] However, the investment advisors are seeking to recover losses for clients that assigned legal title of their claims to their respective investment advisors. Because the clients assigned their claims, the investment advisors are the real parties in interest. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) (holding that assignees with legal title to claims are real parties in interest authorized to sue on the assigned claims in federal court). Ms. Godkin argues that the investment advisors are aggregating claims of dozens or even hundreds of investors for no apparent reason other than to manufacture the largest loss. But the investment advisors have only been assigned claims of their clients—not claims of entirely unrelated parties. Given that the PSLRA favors institutional investors, there is nothing improper with an investment advisor pursuing claims it holds title to in order to recover money for its clients. This is not the kind of lawyer-driven aggregation prohibited in the cases cited by Ms. Godkin. *Cf. In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780, 783 (N.D. Ill. 2000) ("Indeed, any choice that was based on the number of shares held by such an assemblage of small holders would really subvert the purposes of the Reform Act by maximizing the prospect that the lawsuit would truly be run by the lawyers and not by the client class members (none of whom might have a sufficient amount at stake to justify the necessary investment of time and effort to exercise meaningful control of the litigation).").

78u4(a)(3)(B)(I)(cc). Rule 23(a) provides that a party may serve as a class representative "only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The typicality and adequacy elements are the relevant factors to the appointment of a lead plaintiff. *Hospira*, 2012 WL 1339678, at *8. The Combined Group has satisfied its burden by making a preliminary showing that it satisfies the requirements of Rule 23.

Under Rule 23(a), a plaintiff's claims are typical if they "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Here, for purposes of selecting the lead plaintiff, the Combined Group's claims are based on the same legal theories and arise from the same events and course of conduct giving rise to the claims of the other class members in this case. As such, it meets the typicality requirement of Rule 23(a). See *Johnson v. Tellabs*, 214 F.R.D. 225, 228 (N.D. Ill. 2002).

The Combined Group also meets the adequacy requirement in Rule 23(a). "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Hospira, Inc.*, 2012 WL 1339678, at *8 (citing *Tellabs*, 214 F.R.D. at 228-29). There is no indication that the Combined Group's claims conflict with those of the class, as both the lead Plaintiff group and the class include both institutional and individual

investors.[5] Given the Combined Group's alleged losses, it has a substantial interest in the outcome of this case. Finally, the Combined Group is represented by competent, experienced counsel. Thus, the Combined Group satisfies 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc) and is presumed the "most adequate plaintiff" under the PSLRA.

      **D.**     **Rebuttable Presumption**

The presumption established by the PSLRA "may rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C.A. § 78u-4 (a)(3)(B)(iii)(II). Ms. Godkin argues, however, that the Combined Group is subject to unique defenses that make it an improper lead plaintiff. When a member of the purported plaintiff class argues that the presumptive most adequate plaintiff is subject to unique defenses that render in incapable of representing the class, a court does "not have to determine that the defense is likely to succeed," but "ask simply whether [movant] is likely to be 'subject to' the unique defense" to find that an otherwise adequate lead plaintiff has been rebutted, because "the time and attention [a plaintiff] would be required to devote to the * * * issue * * * would distract it from the claims of the rest of the class." *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005).

Ms. Godkin argues that the Combined Group cannot serve as lead plaintiff because the investment advisors in the group are subject to debilitating conflicts of interest and unique defenses stemming from possible liability to their clients. "In support of this argument, Ms. Godkin submitted an affidavit asserting that "[b]ased on her years of legal experience, [she

---

[5] The Court assumes that being subject to a unique defense is not part of the initial Rule 23(a) threshold requirement, but part of the rebuttal analysis contemplated by the PSLRA, as other courts have done. See, *e.g., In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *5 n.7 (N.D. Ill. Mar. 15, 2005).

believes] that clients of investment advisors, who recommended purchasing shares in the LJM Preservation and Growth Fund during the Class Period * * * potentially have valid legal claims against their investment advisors related to those purchases." [96, at ¶ 3.] Ms. Godkin does not, however, provide much support for that assertion, citing in her brief a single comment from an analyst opining that the Fund "should never have been marketed to fund shareholders as a tool for capital preservation." [95, at 13.] Although Ms. Godkin's counsel cites a case granting summary judgment against investment advisors who committed securities fraud, the investment advisors in that case misrepresented facts and omitted information about a conflict of interest. *Hollerich v. Acri*, 259 F. Supp. 3d 806, 812 (N.D. Ill. 2017). Based on the materials before the Court, there is no indication that the investment advisors in the Combined Group engaged in such conduct. Accordingly, it would be improper to disregard the Combined Group's presumptive lead plaintiff status on the basis of the information currently before the Court. *See, e.g., Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2015 WL 1311073, at *9 (S.D.N.Y. Mar. 23, 2015) ("[M]ere allegations of wrongdoing, without a finding established on the record, are insufficient to rebut [the] presumption of adequacy.").

Ms. Godkin also argues that the Combined Group should not be appointed lead plaintiff because there are serious questions about the validity and propriety of some of the assignments obtained by the investment advisors in the Combined Group. [104, at 11-13.] In making this argument, Ms. Godkin challenges just 5 of over 200 assignments on the grounds that they were illegibly signed by an anonymous signatory, signed by the same signatory, and/or left a second signature line blank. *Id.* But Ms. Godkin does not explain how these perceived deficiencies make the assignments invalid. Each assignment provided by the investment advisors in the Combined Group clearly identifies the entity assigning the claims. [97-3.] Furthermore,

Michael C. Provine (Member and Chief Compliance Officer of Traditional Capital Management LLC) and Michael P. Riordan (Managing Director of SRS Capital Advisors, Inc.) submitted a joint affidavit representing that the investment advisors have received assignments from their clients. [63-3.]

Based on the materials before the Court, the Court has no reason to conclude that the assignments were forged or signed by unauthorized persons. To the contrary, the Combined Group has explained in some detail how it secured assignments and recognized its potential discovery-related obligations in connection with those assignments. [See 103, at 13-15.]. Accordingly, the Court does not see any basis for denying the Combined Group of its presumptive lead plaintiff status based on these challenges.[6] *Roofers' Pension Fund v. Papa*, 2017 WL 1536222, at *5 (D.N.J. Apr. 27, 2017) ("Nor does he provide any substantiated allegation or reason to believe that the Perrigo Group executives' sworn declaration attesting to their ownership is incorrect or false. He has therefore not established a probability that the Perrigo Group would focus much, if any, time during the litigation establishing standing; or that such time would be spent at the expense of issues that are common and controlling for the rest of the class."). Because no party has raised a challenge to the adequacy of the Combined Group group beyond mere speculation, the Combined Group's motion for appointment as lead plaintiff is granted. All other motions for appointment as lead plaintiff in this matter are denied.

The Court notes, however, that the Combined Group has a responsibility under the PSLRA to continue to monitor whether its members are capable of adequately protecting the

---

[6] Ms. Godkin also argues that Jarr Equities LLC—an entity that assigned its claims to Traditional Capital LLC ("Traditional")—cannot serve as lead plaintiff because of numerous unrelated lawsuits involving its principals. [104, at 12.] However, Jarr Equities LLC has not moved to be appointed lead plaintiff in this matter; Traditional has. Ms. Godkin has not identified any misconduct on the part of principals of Tradition that undermine its ability to serve as a fiduciary. *Cf. In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) ("On more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary.").

interests of class members. *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 133 (S.D.N.Y. 2007) ("Courts have interpreted their lead plaintiff responsibilities under the PSLRA to encompass a continuing 'duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members.'" (quoting *In re Terayon Commc'ns Sys., Inc. Sec. Litig.*, 2004 WL 413277, at *7 (N.D. Cal. Feb. 23, 2004))). Thus, a lead plaintiff has the "responsibility to propose their own withdrawal and substitution should it be discovered that they may no longer adequately represent the interests of the purported plaintiff class." *Id.* (citing *In re Initial Pub. Offering Sec. Litig.*, 2004 WL 3015304, at *1 (S.D.N.Y. Dec. 27, 2004)). If any lead plaintiff fails to do so, "a member of the purported class will be allowed to endeavor to protect its own interests and the interests of its fellow class members by similarly moving the court to have a lead plaintiff removed upon good cause shown." *Id.* Given the many qualified potential lead plaintiffs and counsel who have come forward at this initial stage of the case to offer their services, the Court feels comfortable that lead plaintiffs and counsel will be carefully monitored going forward, both externally and by the Court itself, to ensure that no unaddressed conflicts arise. The Court is not, however, persuaded to disregard the presumption established by the PSLRA based on unsupported conjecture.

### E. Lead Counsel

Counsel representing the parties who moved for lead plaintiff in this case are highly skilled and have extensive experience in the area of securities litigation. "The PSLRA provides that the lead plaintiffs shall, subject to Court approval, select and retain counsel to represent the class they seek to represent." *Hospira, Inc.*, 2012 WL 1339678, at *9 (citing 15 U.S.C. § 78u–4(a)(3)(B)(v)).

The Combined Group has selected Robbins Geller Rudman & Dowd and Labaton Sucharow LLP to serve as co-lead counsel. Given the extensive experience both of these firms have in the area of securities law, the Court approves them as co-lead counsel in this case. The Court recognizes, of course, its responsibility to carefully scrutinize any fee award sought in this case by co-lead counsel. See 15 U.S.C. § 78u–4(a)(6) (limiting the total award of attorneys' fees and expenses to "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"); see also *Hospira*, 2012 WL 1339678, at *9 ("The parties are on notice, however, that the Court will carefully scrutinize any proposed fee award and will not hesitate to reject such an award if it proves to be unreasonable, especially given that two counsel are being appointed as lead counsel." (citations omitted)); *In re Sprint Corp. Sec. Litig.*, 164 F. Supp. 2d 1240, 1244 (D. Kan. 2001) ("Co-lead counsel are hereby on notice that the court will not approve any possible award of fees and expenses that reflects duplication, inefficiency, or the costs of coordinating the efforts of the two firms.").

## IV. Conclusion

To the extent the motions [47; 52; 57; 61; 67; 71; 75] request that the Court consolidate the above-captioned cases, the motions [47; 52; 57; 61; 67; 71; 75] are denied as moot because the Court has already consolidated the above-captioned cases. [See 78.] For the foregoing reasons, the Court grants in part the motions of the Investment Advisor Group [61] and the Kaufman Group [71] and appoints the Combined Group as lead plaintiff. The Court approves the selection of Robbins Geller Rudman & Dowd and Labaton Sucharow LLP as co-lead counsel. The Court denies the remaining motions [47; 52; 57; 67; 75] in full. The case is set for further status on July 17, 2018 at 10:15 a.m.

Dated: June 26, 2018

_____
Robert M. Dow, Jr.
United States District Judge