UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| LEONARD SOKOLOW, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    vs.<br><br>LJM FUNDS MANAGEMENT, LTD., et al.,<br><br>                Defendants. | No. 1:18-cv-01039<br><br>CLASS ACTION<br><br>Judge Robert M. Dow, Jr. |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. SUMMARY OF THE LITIGATION ........................................................................3

III. LEAD PLAINTIFFS HAVE PROVIDED NOTICE IN COMPLIANCE WITH
RULE 23 AND DUE PROCESS ...............................................................................4

IV. ARGUMENT ..............................................................................................................5

    A. The Proposed Settlement Warrants Final Approval ......................................5

        1. Lead Plaintiffs and Lead Counsel Adequately Represented the
Settlement Class.................................................................................6

        2. The Settlement Resulted from Extensive Arm's-Length
Negotiations .......................................................................................6

        3. The Settlement Provides a Favorable Benefit to the Settlement
Class Considering the Costs, Risks, and Delay of Trial and Appeal ..........8

        4. The Settlement Is Fair and Adequate Under the Remaining
Rule 23(e)(2) Factors .......................................................................11

            a. The Method for Distributing Relief Is Effective............................11

            b. Counsel's Fees Are Reasonable...................................................12

            c. Settlement-Related Agreements....................................................12

            d. The Settlement Treats Class Members Equitably..........................12

        5. The Endorsement of Lead Counsel, and the Reaction of the
Settlement Class, Favor Approval ...................................................13

    B. The Plan of Allocation Warrants Final Approval .................................................14

    C. Class Certification Remains Warranted................................................................15

V. CONCLUSION.........................................................................................................15

4830-9233-5788.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ...............................................................................12

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ...............................................................................10

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .............................................................................10

*In re Career Educ. Corp. Sec. Litig.*,
   No. 03 C 8884, 2008 WL 8666579
   (N.D. Ill. June 26, 2008) .........................................................................................8

*In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
   774 F. Supp. 2d 584 (S.D.N.Y. 2011)....................................................................9

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .................................................................................5

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 WL 1568856
   (N.D. Ill. Dec. 10, 2001) ...............................................................................10, 14

*Reynolds v. Ben. Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ...............................................................................11

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................8, 10, 13

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ....................................................................... *passim*

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §77k.........................................................................................................................3
   §77l..........................................................................................................................3
   §77o.........................................................................................................................3
   §77z-1(a)(4) .........................................................................................................3, 6
   §77z-1(a)(7) ............................................................................................................4

**Page**

Federal Rules of Civil Procedure

Rule 23 .................................................................................................................4, 5, 13, 14

Rule 23(a) ...........................................................................................................................15

Rule 23(b)(3) ......................................................................................................................15

Rule 23(c)(2)(B) ...............................................................................................................4, 5

Rule 23(e)(2) ............................................................................................................... *passim*

Rule 23(e)(2)(A) ..................................................................................................................6

Rule 23(e)(2)(A)-(D) ...........................................................................................................5

Rule 23(e)(2)(B) ..................................................................................................................6

Rule 23(e)(2)(C) ..................................................................................................................8

Rule 23(e)(2)(C)(ii)-(iv) ....................................................................................................11

Rule 23(e)(2)(D) ................................................................................................................11

Rule 23(e)(3) ......................................................................................................................11

- iii -

## I. INTRODUCTION

Lead Plaintiffs Justin and Jenny Kaufman, Dr. Larry and Marilyn Cohen, Joseph N. Wilson, Tradition Capital Management LLC, and SRS Capital Advisors, Inc. ("Lead Plaintiffs") respectfully submit this memorandum in support of their motion for final approval of the Settlement of the claims in this Action against Two Roads Shared Trust, Northern Lights Distributors, LLC, NorthStar Financial Services Group, LLC, Mark D. Gersten, Mark Garbin, Neil M. Kaufman, Anita K. Krug, Andrew B. Rogers, and James Colantino (the "Settling Defendants"), and for approval of the proposed Plan of Allocation.[1]  This Settlement does not resolve Lead Plaintiffs' claims against defendants LJM Funds Management, Ltd., Anthony J. Caine, and Anish Parvateneni (the "Non-Settling Defendants").[2]

The $12.85 million all-cash settlement is the result of Lead Plaintiffs and Lead Counsel's diligent litigation and the parties' arm's-length settlement negotiations over the course of months of contentious negotiations after an unsuccessful settlement conference with Magistrate Judge Sidney I. Schenkier.  Lead Plaintiffs and Lead Counsel believe the Settlement is a highly-favorable result for the Settlement Class under the circumstances before the Court and therefore merits approval.

This case has been zealously litigated from its commencement.  Defendants have repeatedly expressed their belief that Lead Plaintiffs could not adequately plead or prove the claims asserted. Lead Counsel expended substantial effort in reaching the Settlement, including, having: conducted a thorough pre-filing investigation that included the analysis of SEC filings, marketing materials, analyst reports, substantial media coverage, shareholder communications, and potential witness

---

[1]   All capitalized terms not otherwise defined herein have the meanings ascribed in the Stipulation and Agreement of Partial Settlement dated August 19, 2019, ECF No. 192 (the "Stipulation").

[2]   Plaintiff in the state class action *Sokolow v. LJM Funds Management, Ltd., et al.*, No. 18-CH-11880 (Cook Cty. Circuit Crt., IL), has reached a proposed settlement of his claims with some of the Non-Settling Defendants.  *See* ECF No. 196.  The hearing for consideration of final approval of that settlement has been scheduled for June 3, 2020.

interviews; researched and analyzed the law pertinent to the claims and defenses; drafted detailed complaints; prepared comprehensive briefs in opposition to Defendants' motion to dismiss; monitored developments in the case law; consulted with their internal expert in the areas of loss causation and damages; analyzed available insurance to fund a settlement; exchanged mediation briefs, and settlement demands; and prepared for and participated in an all-day settlement conference before Magistrate Judge Schenkier, which included presentations by counsel for the parties.

The $12.85 million Settlement provides the Settlement Class with a certain and substantial recovery without the risk, delay, and expense of continued litigation. Lead Counsel, who are well-respected and have substantial experience in prosecuting securities class actions, have concluded that the Settlement is a very good result for the Settlement Class. This conclusion is based on their diligent prosecution of the Action and all the circumstances present here, including the substantial risks, expenses, and uncertainties of continued litigation, the relative strengths and weaknesses of the claims and defenses, the legal and factual issues presented, the likelihood of obtaining a larger judgment against the Settling Defendants after trial and the recoverability of that judgment, and past experience in litigating similar actions. Even if Lead Plaintiffs were successful at trial and on post-trial appeals, the uncertain recovery from the Settling Defendants would have been years down the road. The Lead Plaintiffs, who have a significant stake in the Action, also believe that the Settlement is in the best interest of the Settlement Class.

For all the reasons discussed herein and in the concurrently-filed declarations, Lead Plaintiffs respectfully submit that the Settlement should be approved by the Court. Likewise, the Plan of Allocation, which was developed by Lead Counsel and their internal damages consultant based on an assessment of damages under the theories asserted in the Action, is fair, reasonable, and adequate, and should be approved by the Court.

## II.      SUMMARY OF THE LITIGATION

The underlying facts are summarized in the previously-filed memorandum in support of preliminary approval (ECF No. 191 at 2-5) and in the accompanying Declarations of James E. Barz and James W. Johnson in support of: (i) Lead Plaintiffs' Motion for Final Approval of Partial Class Action Settlement and Approval of Plan of Allocation, and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Barz Decl." and "Johnson Decl.").  Lead Plaintiffs provide a brief summary here.

Defendants are individuals and entities that signed the Offering Materials for, or participated in, the public offering of shares of the LJM Preservation and Growth Fund (the "Fund").  *See* ECF No. 114, ¶¶16-28.  Lead Plaintiffs allege that Defendants are liable under §§11, 12(a)(2) and 15 of the Securities Act of 1933 for material misrepresentations and omissions in the Offering Materials. *See id.*, ¶¶1-7.  More specifically, Lead Plaintiffs allege that the Offering Materials falsely and misleadingly emphasized the Fund's "capital preservation," "risk mitigation," and ability to profit even in a down market, when, in truth, the Fund allegedly was not focused on capital preservation or risk mitigation, but was instead making aggressive, leveraged, and unmitigated bets that overexposed the Fund to the high risk of catastrophic losses.  *Id.*, ¶¶1-7, 53-54.  In February 2018, the Fund lost 80% of its value in two trading days.  *Id.*, ¶58.  On February 27, 2018, LJM announced that the Fund would be liquidated and dissolved.  *Id.*, ¶69.

Given that the Fund was liquidated, and the available insurance was limited and wasting, the parties agreed to engage in settlement negotiations before a motion to dismiss was filed.  *See* ECF No. 191 at 3.  On September 20, 2018, the parties requested that the Court stay the filing of any motion to dismiss so they could pursue a settlement conference.  ECF No. 122.  This request and early settlement talks are rare in securities cases but were agreed to by all sides here given the wasting insurance and multiple actions drawing from the insurance.  Despite the exchange of

- 3 -

mediation briefs (with exhibits and demands) and a full-day settlement conference overseen by Magistrate Judge Schenkier on December 21, 2018, the parties could not reach a settlement, and the litigation continued. *See* ECF No. 191 at 3.

The parties then filed comprehensive briefs in support of and in opposition to Defendants' joint motion to dismiss. *See* ECF Nos. 151, 159, 166, 168. The Settling Parties continued to engage in arm's-length negotiations and, on May 20, 2019, requested that the Court stay the litigation again so that further negotiations could take place. ECF No. 174. After further negotiations, the Settling Parties ultimately reached an agreement-in-principle and, on August 19, 2019, executed the Stipulation. *See* ECF Nos. 179 & 192. This Court preliminarily approved the Settlement and preliminarily certified the Settlement Class on August 28, 2019. ECF No. 197.

## III. LEAD PLAINTIFFS HAVE PROVIDED NOTICE IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved Lead Plaintiffs' proposed distribution and mailing of the Notice, which includes all the information required by Rule 23 and the PSLRA (15 U.S.C. §77z-1(a)(7)). *See* ECF No. 197, ¶7; ECF No. 191 at 13-15. Pursuant to this Court's order, and in compliance with Rule 23, Lead Plaintiffs have provided "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

As detailed in the accompanying declaration of the Claims Administrator, as of November 12, 2019, more than 61,700 copies of the Claim Packet had been mailed to potential Settlement Class Members, brokers, and nominees. *See* Declaration of Michael McGuinness, ¶10 ("Epiq Decl."). In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the *PR Newswire* on September 19, 2019. *Id.*, ¶13. The Claims Administrator has also established a dedicated Settlement website, www.LJMFundsSecuritiesSettlement.com, to provide potential Settlement Class Members with information concerning the Settlement and access to copies of the

Notice, Claim Form, Stipulation, Preliminary Approval Order, and other case-related documents. *Id.*, ¶16. This combination of individual first-class mail to Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## IV. ARGUMENT

### A. The Proposed Settlement Warrants Final Approval

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Under recently-amended Rule 23, a district court may approve of a class action settlement upon finding "that it is fair, reasonable, and adequate" after considering whether: (1) the class representatives and counsel adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account, among other things, the costs, risks, and delay of trial and appeal; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). Prior to the Rule 23 amendment, the Seventh Circuit provided the following factors for district courts to consider:

> the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).[3]

---

[3]   The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."

- 5 -

Given the $12.85 million all-cash recovery obtained, the risks faced, and the extensive arm's-length negotiations and efforts of Lead Plaintiffs and Lead Counsel that led to the agreement, the Settlement satisfies each of the Rule 23(e)(2) and *Accretive* factors.

### 1. Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Rule 23(e)(2) advises district courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

As detailed herein and in the concurrently filed declarations and Memorandum of Points and Authorities in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiffs Pursuant to 15 U.S.C. §77z-1(a)(4) ("Fee Memorandum"), both Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class by diligently prosecuting this Action and securing the favorable Settlement. *See also infra*, §IV.A.2. Lead Plaintiffs have actively overseen and participated in this Action by, for example, collecting and evaluating trading data, reviewing draft filings, and engaging in conferences with counsel and each other on strategy and decisions regarding the litigation and settlement. *See* Joint Declaration of the Individual Lead Plaintiffs ("Ind. Lead Plaintiffs Decl."), ¶¶1-3; Declaration of SRS Capital Advisors, Inc. ("SRS Decl."), ¶5; Declaration of Tradition Capital Management LLC ("Tradition Decl."), ¶5. Lead Plaintiffs have also retained highly-experienced and well-respected counsel, who have zealously prosecuted the Action from investigation through negotiations, mediation, motion to dismiss briefing, and Settlement. *See* Barz Decl., ¶¶6-9; Johnson Decl., ¶¶6, 11-27. This diligent and adequate representation of the Settlement Class supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2. The Settlement Resulted from Extensive Arm's-Length Negotiations

Rule 23(e)(2) next advises district courts to consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

- 6 -

Here, the Settling Parties reached the partial Settlement only after protracted, arm's-length negotiations between experienced counsel, after an all-day settlement conference with Magistrate Judge Schenkier, which was unsuccessful. At the time of the December 21, 2018 settlement conference with Judge Schenkier, Lead Plaintiffs and Lead Counsel were well-informed of the strengths and weaknesses of the claims, through, for example:

- Lead Counsel's extensive investigation in connection with preparing Lead Plaintiffs' detailed Complaint based on a review and analysis of SEC filings, substantial media and analyst reports, press releases and other publicly-available information, shareholder communications, interviews with potential witnesses, and relevant case law and authorities (*see* Barz Decl., ¶6(a); Johnson Decl., ¶17);

- the exchange of mediation briefs (with exhibits) and settlement demands that detailed the parties' respective positions on liability and damages (*see* Barz Decl., ¶6(c));

- the review and analysis of Defendants' (wasting) insurance policies and of information regarding the liquidation and closing of the Fund and Defendants' ability to pay (*see* Barz Decl., ¶¶5, 6(c); Johnson Decl., ¶¶38-41);

- multiple phone conferences among counsel for the parties regarding the claims, defenses, available insurance, and ability to pay (*see* Barz Decl., ¶¶6(g), 9); and

- multiple phone conferences between Lead Plaintiffs and Lead Counsel regarding the foregoing information (*see* Barz Decl., ¶6(d)).

The settlement conference itself involved the additional exchange of the parties' respective views on the merits of Lead Plaintiffs' claims, Defendants' defenses, and issues related to damages. *See* Barz Decl., ¶6(e). The settlement conference and negotiations were hard-fought, with the parties exchanging demands and engaging in breakout sessions with Magistrate Judge Schenkier. *See id.*, ¶¶6(e), 7. The parties were unable to reach an agreement at the end of the all-day conference. *See id.*, ¶6(f). Although Lead Plaintiffs and Lead Counsel could have accepted a lower settlement amount at that time, they pressed on and reached an agreement with the Settling Defendants only after fully briefing Defendants' motion to dismiss and continued negotiations. *Id.*, ¶9.

This contentious, well-informed, arm's-length negotiation process supports final approval. *See Accretive*, 773 F.3d at 864 (affirming approval of securities class action settlement before a ruling on the motion to dismiss where "[t]he settlement was reached through extensive arm's-length negotiations with an experienced third-party mediator, the parties contentiously litigated a motion to dismiss," and "[i]nsurance proceeds to fund a settlement or judgment were a limited, wasting asset"); *In re Career Educ. Corp. Sec. Litig.*, No. 03 C 8884, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (approving settlement that "resulted from arms-length negotiations and voluntary mediation between experienced counsel").

### 3. The Settlement Provides a Favorable Benefit to the Settlement Class Considering the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2) next advises district courts to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). The Seventh Circuit has likewise instructed courts to consider: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (2) the complexity, length, and expense of further litigation. *See Accretive*, 773 F.3d at 863-64. The $12.85 million cash recovery obtained for the benefit of the Settlement Class provides highly-favorable relief considering the legal, factual, and practical risks of continued litigation with the Settling Defendants.

Like in *Accretive*, the "stage of proceedings and the amount of discovery completed" weighs in favor of approval because "[a]lthough formal discovery had not commenced, [Lead Plaintiffs] had access to extensive public documents," 773 F.3d at 864, as well as information from shareholder communications, potential witnesses, and the pre-mediation exchange of information. *See* Barz Decl., ¶6(a); Johnson Decl., ¶¶14, 24; *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011) (approving settlement prior to discovery and noting that the "'label of 'discovery'

[either formal or informal] is not what matters'" . . . "[i]nstead, 'the pertinent inquiry is what facts and information have been provided'") (citation omitted).

While Lead Plaintiffs believe that they had assembled a strong case against the Settling Defendants for liability, a favorable ruling on the motion to dismiss or a finding in favor of the class at trial was never assured. Lead Plaintiffs would need to prove to the satisfaction of the Court and jury that the Offering Materials for Fund shares contained false and misleading statements that were material to a reasonable investor. Settling Defendants have adamantly denied liability. *See* ECF No. 151 (29-page memorandum seeking to dismiss the case in its entirety). They maintain that the Offering Materials were not materially false or misleading because they: (i) stated only the investment objectives announcing the goal of the Fund, not a promise of performance; (ii) detailed the Fund's trading strategies, including descriptions of the options the Fund would trade; and (iii) disclosed risks associated with those strategies, including the risk of large, immediate and/or unlimited losses. *See id.* at 9-19. NorthStar and NLD would also argue that NLD – the underwriter – is entitled to a "due diligence" defense, and Lead Plaintiffs could not prove that NorthStar was a "controlling person" of NLD under the Securities Act. *See id.* at 27-28. Although Lead Plaintiffs have opposed these arguments with significant support (*see* ECF No. 159), there was no guarantee of success.

If Lead Plaintiffs established the liability of the Settling Defendants, they would still face risks and uncertainty regarding proof of loss causation and damages. Lead Plaintiffs allege that the Fund lost over 80% of its value in early February 2018 when the truth was revealed, but Settling Defendants have argued that none of those losses are recoverable because the Fund share prices were set by the Fund's net asset value, rather than a stock price on a national exchange. Thus, according to the Settling Defendants, the decline in NAV was due to a decline in the value of the underlying securities held by the Fund, and it would have occurred regardless of the alleged representations and/or omissions in the Offering Materials. *See* ECF No. 151 at 19-21 (citing *In re State Street Bank & Trust*

- 9 -

*Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 590 (S.D.N.Y. 2011)). Even if the Settling Defendants failed in that argument, they would have retained experts to opine that not all of the losses correlated to recoverable damages attributable to the alleged misstatements or omissions. Continued litigation thus bore the risk that potential damages could have been reduced, or eliminated entirely.

As set forth above, with conflicting arguments and evidence, there is no certainty that Lead Plaintiffs would prevail at trial (or appeal) on liability or damages. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain."). Moreover, the likely "complexity, length, and expense of further litigation" would have been substantial, which weighs in favor of settling the claims. *Accretive*, 773 F.3d at 863. For example, to prove their claims against the Settling Defendants, Lead Plaintiffs would need to negotiate for, obtain, and analyze voluminous additional documents from Defendants and non-parties, and Defendants in turn would seek documents from Lead Plaintiffs, and both sides would take numerous depositions. *See Schulte*, 805 F. Supp. 2d at 586 ("'The costs associated with discovery in complex class actions can be significant.'") (citation omitted). Each side could retain experts, resulting in a "battle of the experts," which is a costly, uncertain, and difficult-to-predict endeavor. *See Accretive*, 773 F.3d at 863 (noting that calculating damages in a securities class action would have "resulted in a lengthy and expensive battle of the experts, with the costs of such a battle borne by the class – exactly the type of litigation the parties were hoping to avoid by settling"). Even if Lead Plaintiffs were able to win on every issue, the entire litigation process could span several years, using the available insurance on the costs of defense.[4] *See* Barz Decl., ¶5; Johnson Decl., ¶¶30-41.

---

[4] Even a meritorious case can be lost at trial. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor). And even trial victory may not end the litigation. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (ordering new trial 13 years after case was commenced).

In contrast, the $12.85 million settlement, at this juncture, results in a certain and favorable recovery, without the considerable risk, expense, and delay of fact and expert discovery, summary judgment motions, and trial and post-trial litigation. *See Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."). Consideration of this factor supports final approval. *See Accretive*, 773 F.3d at 864 (affirming approval of $14 million settlement where the defendant "was prepared to vigorously contest the lawsuit, having raised potentially valid defenses[,] [defendant]'s motion to dismiss was fully briefed and argued before the district court[,] [f]urther litigation almost certainly would have involved complex and lengthy discovery and expert testimony[, and] [i]nsurance proceeds to fund a settlement or judgment were a limited, wasting asset, *i.e.*, further defense costs would have reduced those funds").

### 4. The Settlement Is Fair and Adequate Under the Remaining Rule 23(e)(2) Factors

Rule 23(e)(2) also advises district courts to consider: (i) "the effectiveness of any proposed method of distributing relief to the class"; (ii) "the terms of any proposed award of attorney's fees, including timing of payment"; (iii) "any agreement required to be identified under Rule 23(e)(3)"; and (iv) whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). Each of these factors further weighs in favor of final approval.

### a. The Method for Distributing Relief Is Effective

As explained in §III above and §IV.B. below, the methods used in the notice and claims administration process are effective and they provide Settlement Class Members with the necessary information to receive their *pro rata* share of the Settlement. *See* Epiq Decl., Ex. A (Notice at 11-12). The claims process provides for straightforward cash payments based on the trading information provided, and it provides claimants with an opportunity to cure any deficiencies or

- 11 -

Case: 1:18-cv-01039 Document #: 206 Filed: 11/13/19 Page 16 of 21 PageID #:3061

request review by the Court of any denial of their claims. *Id.* This method for distributing relief in securities class actions is well-established and effective. *See infra*, §IV.B.

> **b.     Counsel's Fees Are Reasonable**

As detailed in the Fee Memorandum, the proposed attorneys' fees of 28% of the Settlement Fund plus litigation costs, charges and expenses, are reasonable in light of the efforts of Lead Counsel, the contingent nature of their representation, and the risks in the litigation. Since this is not a "claims made" settlement, the entire Net Settlement Fund will be distributed to Settlement Class Members until it is no longer economically feasible, so there no risk that counsel will be paid but Settlement Class Members will not. *Cf. Eubank v. Pella Corp.*, 753 F.3d 718, 726-27 (7th Cir. 2014) (rejecting settlement where attorneys would receive fees based on inflated settlement value, as defendants were likely to pay only a fraction of the purported settlement value to the class).

> **c.     Settlement-Related Agreements**

In addition to the Stipulation, the Settling Parties have entered into a confidential Supplemental Agreement that establishes the conditions under which Settling Defendants would be able to terminate the Settlement based on whether requests for exclusion from the Settlement Class reach a specified threshold. *See* Stipulation, ¶43. This type of agreement is a standard provision in securities class actions. *See, e.g.*, *Rubinstein v. Gonzalez*, No. 14-cv-09465, Stipulation of Settlement, ECF No. 274-1, ¶8.3 (N.D. Ill. June 19, 2019). Lead Plaintiffs and the Settling Defendants have no other agreements with each other.

> **d.     The Settlement Treats Class Members Equitably**

Under the Plan of Allocation, eligible claimants will receive their *pro rata* share of the recovery based on the number of Fund shares purchased. Epiq Decl., Ex. A (Notice at 11-12). Lead Plaintiffs will receive the same type of *pro rata* recovery (based on their Recognized Claims as

- 12 -

4830-9233-5788.v2

calculated under the Plan of Allocation) as all other similarly situated Funds purchasers. Thus, the partial Settlement treats Settlement Class Members equitably.

### 5. The Endorsement of Lead Counsel, and the Reaction of the Settlement Class, Favor Approval

In addition to the Rule 23(e)(2) factors, the Seventh Circuit has noted that the "opinion of competent counsel," the "amount of opposition to the settlement" and "the reaction of members of the class to the settlement" are also relevant considerations. *See Accretive*, 773 F.3d at 863.

Here, the settled claims have been litigated and settled by experienced and competent counsel on both sides of the case. Lead Counsel are well known for their experience and success in complex class action litigation and have many years of experience in litigating securities class actions. *See* Barz Decl., ¶¶15, 19-21; Johnson Decl., ¶¶60-62. Based on their extensive experience and expertise, Lead Counsel have determined that the Settlement is in the best interest of the Settlement Class after weighing the substantial benefits of the Settlement against the numerous obstacles to a better recovery after continued litigation. *See* Barz Decl., ¶¶9, 19, 22; Johnson Decl., ¶¶29-41. This endorsement favors final approval. *See Schulte*, 805 F. Supp. 2d at 587 (holding opinion of counsel with "extensive experience" that the settlement was beneficial to the class and met the requirements of Rule 23 "supports [the court's] approval of the Settlement").

Moreover, as discussed in §III above, the Claims Administrator has commenced a robust notice program providing notice to tens of thousands of potential class members in accordance with the Preliminary Approval Order. While the deadline for the Settlement Class Members to exclude themselves or object is November 27, 2019, to date no objections and just two requests for exclusion (only one of which is valid) have been received.[5] Epiq Decl., ¶¶17-18. Lead Plaintiffs are

---

[5] Of course, the mere existence of objections or requests for exclusion does not preclude approval of the agreement. *Accretive*, 773 F.3d 859 (affirming settlement approval over objection); *Schulte*, 805 F. Supp. 2d 560 (approving settlement over 10 objections); *Rubinstein*, No. 14-cv-09465, ECF No. 297 (N.D. Ill. Oct. 22,

Settlement Class Members with significant losses who participated in and oversaw the Action, and they endorse the Settlement. *See* Ind. Lead Plaintiffs Decl., ¶4; Tradition Decl., ¶6; SRS Decl., ¶6. This favorable reaction by the Settlement Class also supports final approval.

Thus, each Rule 23(e)(2) and *Accretive* factor is satisfied. Lead Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and request that the Court grant final approval.

**B.     The Plan of Allocation Warrants Final Approval**

Lead Plaintiffs also seek approval of the Plan of Allocation, which is set forth in full in the Notice. *See* Epiq Decl., Ex. A. Assessment of a plan of allocation under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable. *See Retsky*, 2001 WL 1568856, at *3.

Here, the Plan of Allocation was developed by Lead Counsel in conjunction with one of their internal damages consultants and it reflects an assessment of damages that could have been recovered under the theories asserted. *See* Barz Decl., ¶11. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that an Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants. *See* Epiq Decl., Ex. A (Notice at 11-12). Calculation of an Authorized Claimant's Recognized Claim will depend upon several factors, including when the shares were held, purchased, or sold. *See id*. This method of distributing settlement funds is fair, reasonable, and adequate. *See, e.g.*, *Rubinstein*, No. 14-cv-09465, ECF No. 274-1 (N.D. Ill. June 19, 2019) (setting forth similar plan of allocation); *id.*, ECF No. 296 (N.D. Ill. Oct. 22, 2019) (approving plan of allocation); *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-2450, Notice, ECF No. 355-2 at 5-7 (N.D. Ill. Mar. 25, 2016) (setting forth similar plan of allocation); *id.*, ECF No. 368 (N.D. Ill. July 13, 2016) (approving plan of allocation).

---

2019) (approving settlement with 10 requests for exclusion). Lead Plaintiffs will file reply papers on December 11, 2019 that will address all requests for exclusion and any objections received.

## C.    Class Certification Remains Warranted

The Court previously, for settlement purposes only, preliminarily: (1) approved this Action as a class action pursuant Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and (2) appointed Lead Plaintiffs as class representatives and Lead Counsel as class counsel.  ECF No. 197, ¶¶2-4; *see also* ECF No. 191 at 10-13 (showing that the Settlement Class satisfies all the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure).  None of the facts regarding certification of the Settlement Class have changed since Lead Plaintiffs submitted their motion for preliminary approval, and there has been no objection to certification.  Accordingly, Lead Plaintiffs respectfully request that the Court grant final certification of the Settlement Class and appointment of Lead Plaintiffs as class representatives and Lead Counsel as class counsel, for settlement purposes only, pursuant to Rules 23(a) and (b)(3).

## V.    CONCLUSION

For the reasons stated in this memorandum, in the accompanying declarations, and in the Fee Memorandum, Lead Plaintiffs respectfully request that the Court approve the Settlement and the Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class.

DATED:  November 13, 2019                   Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ (IL Bar # 6255605)
BRIAN E. COCHRAN (IL Bar # 6329016)
FRANK A. RICHTER (IL Bar # 6310011)


/s/ James E. Barz
JAMES E. BARZ

- 15 -

4830-9233-5788.v2

200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)
jbarz@rgrdlaw.com
bcochran@rgrdlaw.com
frichter@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

LABATON SUCHAROW LLP
JAMES W. JOHNSON (IL Bar # 03128047)
MICHAEL H. ROGERS (*pro hac vice*)
JOHN ESMAY (*pro hac vice*)
MARGARET SCHMIDT (*pro hac vice*)
140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jjohnson@labaton.com
mrogers@labaton.com
jesmay@labaton.com
mschmidt@labaton.com

Co-Lead Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2019, I caused the foregoing MEMORANDUM OF

POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL

APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF

ALLOCATION to be served electronically through the Court's ECF system upon all registered

ECF participants.



/s/ James E. Barz
JAMES E. BARZ